IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                                 **Criminal Action No. 3:15cr162**

**THOMAS LINWOOD HENRY,**

              **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Thomas Linwood Henry's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motions"). (ECF No. 41.) The United States responded in opposition (the "Opposition"). (ECF No. 47.) Henry filed a reply (the "Reply"). (ECF No. 48.) On December 10, 2020, Henry filed a "Status Update on Outbreak at FCI Cumberland," informing the Court of a significant COVID-19 outbreak at the prison where Henry resides. (ECF No. 49.) The United States did not respond to the Status Update. Three weeks later, on December 31, 2020, the Bureau of Prisons moved Henry to a residential re-entry center, where he currently resides.

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

### I. Background

On October 6, 2015, an Eastern District of Virginia Grand jury charged Henry with one count of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride. (Indictment 1, ECF No. 9.) On December 2, 2015, Henry

pled guilty to the one-count Indictment. (Plea Agr. ¶ 1, ECF No. 13.) Prior to sentencing, a Probation Officer determined that Henry "has at least two prior felony convictions of either a crime of violence or a controlled substance offense; therefore, [Henry] is a career offender." (Presentence Investigation Report ("PSR") ¶ 19, ECF No. 17.) Henry's two predicate controlled substance offenses included: (1) a 2009 Virginia conviction for possession with intent to distribute approximately 2.5 grams of heroin; and, (2) a 2013 Virginia conviction for distribution of heroin as an accommodation, involving the provision of $40 worth of heroin to a third party. (*Id.* ¶¶ 41, 42.) Based on his career offender status, Henry faced a Sentencing Guidelines range of 151 to 188 months' imprisonment. (PSR 24.)

At sentencing, the Court found that the career offender designation inordinately skewed Henry's sentencing range. The Court sentenced him to 96 months of imprisonment—55 months below the low end of the Guidelines range—and five years of supervised release. (J. 2–3, ECF No. 22.) Henry did not appeal. Henry later sought postconviction relief through filing a 28 U.S.C. § 2255 motion, which this Court denied. *United States v. Henry*, No. 3:15cr162, 2018 WL 2015811, at *2 (E.D. Va. Apr. 30, 2018).

Henry was previously housed at FCI Cumberland. On December 31, 2020, the Bureau of Prisons ("BOP") moved Henry to a residential reentry, from which he will be released on July 5, 2021.[1] *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On July 27, 2020, Henry "submitted a written request to the Warden of FCI Cumberland requesting compassionate relief under the First Step Act." (Opp'n 2, ECF No. 47.) On August

---

[1] The Bureau of Prisons website lists Henry as located in "Raleigh RRM." *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. The Court cannot confirm, and the Parties do not verify, whether any COVID-19 cases exist at that location.

7, 2020, the Warden denied that request. (*Id.* 3.) Counsel for Henry filed the instant Motion for Compassionate Release on October 13, 2020. (Mot., ECF No. 41.)

In the Motion, Henry describes the current public health crisis caused by COVID-19. (*See e.g.*, Mot. 8–10.) Henry, currently forty-years old, contends that he suffers from "obesity, Crohn's disease, and anemia," making him more susceptible to suffer serious health consequences from COVID-19 should he contract the virus. (*Id.* 1–2.) Henry avers that he "is serving a sentence for a non-violent drug offense which did not involve any firearms, violence, or a supervisory role." (*Id.* 1.) Henry notes that he has had zero disciplinary infractions while incarcerated, (*id.* 18), and upon his release he will live with his daughter in a two-bedroom residence that will allow for additional social distancing. (*Id.*) The BOP has already approved Henry's proposed living arrangement as a suitable release plan. (*Id.*).

The United States opposes Henry's request for compassionate release, arguing that no extraordinary or compelling reasons exist to support his request and that, "[i]n any event, according to the [BOP, Henry] is currently scheduled to transfer to a halfway house placement on December 31, 2020 as he is nearing his projected release on July 5, 2021." (Opp'n 1, ECF No. 47.) The United States observes that Henry "was responsible for distributing over 80 grams of crack cocaine on two occasions within 13 days" and "[h]is criminal history at the time of sentencing was a category VI." (*Id.* 15.) The United States argues that Henry's "history of drug distribution offenses, and the commission of new offenses while on supervised release and probation suggest that his early release from prison would endanger the public, and not adequately deter him from future criminal conduct." (*Id.*)

On December 10, 2020, Counsel for Henry filed a Status Update, informing the Court of a significant COVID-19 outbreak at FCI Cumberland. (Dec. 10, 2020 Status Update; ECF

3

No. 49.) "As of December 10, 2020, the Bureau of Prisons reports that there are 219 inmates and 9 staff members at Cumberland with 'active' cases of the virus; 12 inmates and 21 staff members have purportedly 'recovered.'" (*Id.* 1.) The United States did not file a response to the Status Update.

Henry now resides in a residential re-entry center. Since December 10, 2020, the Court has received no further updates regarding Henry's health or the number of COVID-19 cases at the residential re-entry center where he is serving the remainder of his sentence.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of

---

[2] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

4

the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, No. 19-7668, 2021 WL 218888, at *8 (4th Cir. Jan. 22, 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "'pursuing an administrative remedy would be futile[,]' 'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the

petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283. As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18

U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release, though not binding, further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13.[3] These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Henry has sufficiently exhausted his administrative remedies. (*See* Opp'n 3 (recognizing Henry has exhausted his administrative remedies).)

Next, the Court finds that Henry's health conditions raise serious concerns about his well-being should he contract COVID-19, but his circumstances have changed because he is no longer

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

housed in FCI Cumberland. The Motion at bar focuses on COVID-19 transmission in jails and prisons.[4] The Parties have not submitted statistics on the prevalence or risk of COVID-19 cases at the residential re-entry center (or "halfway house") where Henry is serving the final four months of his sentence. After conducting its own research, the Court has found no reports of COVID-19 cases at Henry's current location. Based on the current record before the Court, Henry does not establish special circumstances warranting a sentence reduction based on his location in the halfway house that lacks COVID-19 because he does not face a particularized risk of contracting the virus.

In any event, the Court turns to statutory sentencing factors and the relevant Guidelines policy statement to determine whether the Court should grant Henry relief. After considering the relevant statutory sentencing factors and the policy statement, along with Henry's current location in a residential re-entry center, the Court will deny the Motion.

Pursuant to USSG § 1B1.13, the Court should consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the reduction aligns with the policy statement. *See McCoy*, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). Upon review, Henry has served the majority of his 96-month sentence and is completing his sentence in a residential re-entry

---

[4] In its Opposition, the United States contends that Henry has not demonstrated that he faces higher susceptibility to COVID-19 and that he has not shown that his prison facility is at heightened risk of a COVID-19 outbreak. (Opp'n 9-12.) First, the Court notes that obesity increases risks associated with COVID-19. Although the Record does not firmly demonstrate whether Crohn's disease and anemia present similar risks with the virus, Henry's 268 pages of medical records show that he has serious, ongoing health issues. (ECF No. 45.) Nevertheless, Henry's circumstances have changed since he left FCI Cumberland and he now resides in a halfway house absent COVID-19 with roughly four months remaining on his sentence.

center. Henry's sentence of 96 months largely reflects his career offender designation, which drove his advisory Guidelines range to 151 to 188 months. Additionally, upon release Henry will begin to serve a five-year supervised release term for his offense. This sentence adequately deters criminal conduct. The Court also commends Henry's disciplinary record and rehabilitative efforts while in prison, particularly as he obtained his GED, completed RDAP, and did not received a single disciplinary infraction while incarcerated. (ECF No. 41-3.)

Nevertheless, because Henry committed a serious drug offense, which weighs against his request for immediate release, and he does not face a particularized risk of contracting COVID-19 at his current location, the Court will deny the Motion.

### IV. Conclusion

For the reasons explained above, the Court will deny the Motion. (ECF No. 41.)

/s/
M. Hannah Lauck
United States District Judge

Date: Feb. 22, 2021
Richmond, Virginia